[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-16399

_____

D. C. Docket No. 03-00091 CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THEODORE ANTHONY ANDREWS,
a.k.a. Theodore Anthony Warren,
a.k.a. Theodore Anthony Blankenship,
a.k.a. Theodore Anthony Paparock,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 14, 2005)

Before BLACK and STAPLETON[*], Circuit Judges.[**]

_____

[*] Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit, sitting by designation.

[**] Judge Charles R. Wilson, a member of this panel, did not participate in this decision. This decision is rendered by quorum. *See* 28 U.S.C. § 46(d); 11th Cir. R. 34-2.

PER CURIAM:

Appellant Theodore Anthony Andrews was convicted after a jury trial of being a felon in possession of a handgun, in violation of 18 U.S.C. § 922(g), and was sentenced to 110 months' imprisonment. He appeals his conviction, contending a tape of a 911 call was erroneously admitted into evidence. He also contends the corresponding transcript should not have been submitted to the jury. We affirm.

## I. BACKGROUND

On May 5, 2003, at 2:50:55 a.m., the Pensacola Police Department (PPD) received a 911 call from an anonymous caller at a pay telephone at "E" Street and Cervantes Street in Pensacola, reporting that a man named Paparock[1] was waiving a gun around and threatening people. At 2:51:21 a.m., notice of the call was provided to a dispatcher to be sent over the radio to PPD officers. Officer Stephen Davis responded and arrived at "E" Street and Cervantes Street within 30 to 45 seconds. The only person he saw was a woman walking west on Cervantes Street between "E" and "F" Streets. Officer Davis turned north on "F" Street. Before he was midway up the block, he saw Andrews walking west along the north side of one of the apartment buildings. Andrews was yelling and waving his arms over

---

[1] Paparock is Andrews' street name.

2

his head.  Andrews then turned south around the far end of the apartment building. Officer Davis made a U-turn so that when Andrews emerged from the building's southwest corner, they would be facing each other.

When Andrews saw Officer Davis, he stopped yelling and waving his arms. Officer Davis drew his weapon and shined his spotlight on Andrews.  By that time, other officers, including Officer John Austin, had arrived on the scene.  The officers told Andrews to come toward them with his hands up.  Andrews did not obey the officers' command.  Instead, he shoved his hand down his pocket and "fiddl[ed] with something."  Andrews turned his body sideways so the side where he had his hand in his pocket was turned away from the officers.  Officer Austin testified that this behavior is typical when a defendant is trying to get rid of evidence.  Andrews put his hand down as though he was dropping something, and then raised his hands and walked toward the officers.

Officer Davis patted Andrews down and did not find anything.  Officer Austin walked to the area where he thought Andrews had dropped something, and found a chrome revolver.  Officer Austin told Officer Davis to arrest Andrews.  At that point Andrews said: "That's not mine."  The officers testified at trial that Andrews made the statement after Officer Austin had given the instruction to arrest Andrews, but before the officers said anything about having found a gun.

3

Andrews testified that he made the statement after the police officers asked if the gun was his.

The officers did not find anything else in the vicinity of the revolver. No prints were found on the revolver or its ammunition.

The issue at trial was whether Andrews possessed the handgun found by the police. (Andrews stipulated to being a convicted felon.) The Government introduced the 911 tape during its case in chief. Andrews testified on his own behalf, contradicting much of the police testimony.

After the Government's rebuttal case, and after a charge conference, the judge asked whether there was a transcript of the 911 tape. Andrews objected to the use of the transcript, contending the tape was not entirely clear. The judge decided to submit the transcript as "an aid" to the jury, with the following limiting instruction:

> And, ladies and gentlemen, we have now reached that part of the trial where the attorneys get to make their closing arguments to you.
> Before we get into that, though, let me make one announcement to you with respect to the tape that's in evidence as Government Exhibit 1, which is a recording of a Pensacola 911 call. Also for your use in listening to that is a transcript. It's a single sheet of paper. This transcript is not the primary evidence in the case. What's on the tape is the evidence. And this transcript is simply as an aid to you in listening to the tape to assist you. But in case of any conflict between what's on the tape and what you hear and what's on

this transcript, it's what's on the tape that controls, and it's the tape that's evidence. This transcript is not in evidence. It's simply an aid to you.

The jury convicted Andrews, and he was sentenced to 110 months' imprisonment.

## II. DISCUSSION

Andrews contends the admission of the tape of the 911 call, and submission to the jury of the transcript of that call, was in violation of his rights under the Confrontation Clause, as articulated by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), and in violation of the rules of evidence.

A.    Crawford v. Washington

We need not determine whether admission of the 911 tape and submission of the transcript to the jury violated Andrews' Confrontation Clause rights because, assuming error, it was harmless beyond a reasonable doubt.

In our view, the primary reason the admission of the 911 call and submission of the transcript to the jury is of concern (in terms of our harmless error analysis) is because it identifies Andrews by his street name as the person

with a gun.[2]  There is, however, overwhelming evidence linking Andrews to the gun.

Andrews was the only man police found in the area near the pay phone from which the 911 call had been placed.  When the police observed Andrews he was yelling and waving his arms around.  When the officers told Andrews to put his hands up and walk towards them, Andrews initially did not follow the officers' commands.  Rather, he put his hand in his pocket, turned his body away from the officers, and fiddled around as though he was trying to get something out of his pocket without the officers seeing what it was.  Officer Austin testified that when a suspect behaves in this manner he typically is trying to get rid of evidence.  In addition, Officer Austin observed Andrews put his hand down as though he was dropping something.  Only then did Andrews comply with the officers' command to raise his hands.  When Officer Austin went to the location where Andrews moved as though he was dropping something, Officer Austin found the gun. Given the nature of the evidence linking Andrews to the gun, we conclude admission of the 911 tape (as well as the submission of the transcript to the jury) was harmless beyond a reasonable doubt.

---

[2]  Andrews goes even further in his brief, stating:  "[T]he 911 tape itself might have been admissible, on other grounds, absent the disputed and prejudicial portion containing the anonymous and unconfrontable identification of Appellant."  Appellant's Brief at 14 n.4.

B.    *Rule 403*[3]

Andrews contends that admission of the unredacted tape (and submission of the transcript to the jury) was error under Rule 403 of the Federal Rules of Evidence because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.  We review the district court's evidentiary rulings for abuse of discretion, *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003), and conclude there was no error.

### III.  CONCLUSION

For the foregoing reasons, we affirm the judgment entered by the district court.

AFFIRMED.

---

[3] To the extent Andrews argues submission to the jury of the transcript of the 911 call was error for reasons other than those set out in his Confrontation Clause and Rule 403 arguments, we affirm without discussion.  *See* 11th Cir. R. 36-1.