[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16275
Non-Argument Calendar

_____

D. C. Docket No. 02-20030-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHEMTOV MICHTAVI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 14, 2005)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Shemtov Michtavi appeals his conviction and 240-month sentence for

conspiracy to distribute Methylenedioxymethamphetamine ("MDMA"), or "Ecstasy," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. He contends that the district court erred by (1) admitting into evidence newspaper articles describing a drug bust and allowing his impeachment with these articles, and (2) enhancing his sentence based on a drug quantity that was not pled in the indictment, admitted by him, or proved to a jury beyond a reasonable doubt, in violation of *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). We affirm Michtavi's conviction, but vacate his sentence and remand for resentencing.

## I.

At Michtavi's trial, co-conspirator Mordechai Cohen testified on direct examination (for the Government) about various conversations he had with Michtavi regarding the sale of Ecstasy pills.[1] These conversations included phone calls recorded at the behest of the Israeli National Police, with whom Cohen was cooperating. Cohen explained that he would sometimes speak in "code" during these conversations, *i.e.* avoiding the use of terms such as "drugs" to make the conversations appear more innocuous. When questioned by the Government

---

[1] The audio recordings of the conversations themselves, which occurred in Hebrew, were put into evidence along with transcribed English translations, which were then published to the jury.

about a statement in the recording that referenced newspaper stories, Cohen explained that it referred to articles in an Israeli newspaper about the New York drug seizure related to the instant case. On cross examination, Michtavi's counsel suggested that Cohen did not actually employ a code in his phone conversations with Michtavi–and that Michtavi would thus not have known that Cohen was really speaking about drugs. On redirect, the Government sought to rehabilitate Cohen's testimony by having him identify several Israeli newspaper articles covering the New York drug seizure as the newspaper articles to which he was referring in the recorded conversation with Michtavi. Michtavi's counsel objected to the articles as irrelevant and inflammatory, but the district court determined that Michtavi's counsel had opened the door to the issue on cross examination; and the parties ultimately stipulated that the articles were from the Israeli press and addressed the seizure of Ecstasy in New York in mid-July of 2001. On recross, Michtavi's counsel asked why Cohen would have referred to news articles that were several months old by the time of Cohen's recorded conversation with Michtavi. Cohen explained that he had kept the articles in order to expand his conversation with Michtavi for the benefit of the Israeli National Police.

The Government also made use of these newspaper articles during its cross examination of Michtavi, who disputed the dates on which the articles were

published. In response, the Government produced a stipulation signed by Michtavi some 30 minutes earlier that encompassed the dates of publication of the articles, and asked whether Michtavi had lied in the stipulation or was incorrect in his testimony. Michtavi stated that he signed the stipulation because his attorney gave it to him, and did not notice the dates.

Michtavi contends that he was deprived of a fair trial because: (1) the Israeli newspaper articles were inadmissible hearsay, and (2) the Government's use of the articles in an effort to impeach Michtavi's testimony was improper and deprived him of his Sixth Amendment confrontation rights under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We review a district court's evidentiary rulings for abuse of discretion, and will reverse only if a resulting error affected the defendant's substantial rights. *See United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "[A] newspaper article is hearsay, and in almost all circumstances is inadmissible." *Dallas County v. Commercial Union Assur. Co.*, 286 F.2d 388, 392 (5th Cir. 1961).[2] Here, however, the Government did not

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the

offer the newspaper articles to prove the truth of the matter asserted therein–the occurrence of the drug bust–but rather to show that newspaper articles reporting a New York drug bust existed, and thereby rehabilitate Cohen's testimony. As for Michtavi's Sixth Amendment argument, *Crawford* holds that "[w]hen *testimonial* evidence is presented against a defendant at trial, the Sixth Amendment right of confrontation cannot be denied unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine him." *United States v. Chau*, 11 Cir. 2005, __ F.3d __, (No. 05-10640, Sept. 27, 2005) (emphasis added) (citing *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374). Michtavi does not explain how the newspaper articles were used as "testimonial" evidence. Moreover, the Government sought to impeach Michtavi with his own stipulation, not the articles themselves.[3] The district court did not abuse its discretion in permitting the use of the newspaper articles to rehabilitate Cohen's testimony, or in allowing the Government to impeach Michtavi with his own stipulation. We therefore affirm Michtavi's conviction.

---

close of business on September 30, 1981.

[3] Michtavi complains that the Government's inquiry as to whether he was lying or mistaken when he signed the stipulation, or whether he signed it without considering its accuracy, was "unfair, misleading, and improper." Michtavi's counsel objected to nothing more than the Government's use of the term "lying," however, and Michtavi was permitted to explain to the jury why he signed the stipulation without reading it carefully. We are not persuaded that the Government's brief inquiry, which was precipitated by Michtavi's challenge to the dates of the newspaper articles, was a "foul blow" that "deprived Michtavi of a fair trial."

5

## II.

Michtavi also contends that the district court erred in enhancing his sentence on the basis of a drug quantity that was not pled in the indictment, admitted by him, or proved to a jury beyond a reasonable doubt, in violation of *Booker*. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir.) ("The holding in *Booker* is that the Sixth Amendment right to a trial by jury is violated where *under a mandatory guidelines system* a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury."), *cert. denied*, __ U.S. __, 125 S. Ct. 2935, 162 L. Ed. 2d 866 (2005). Because Michtavi raised his *Booker* objection to the district court's application of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") at his sentencing, we review the issue *de novo*, and will reverse "only if any error was harmful." *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam).

To establish that a preserved constitutional *Booker* error is harmless, the Government must show beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained. *Id.* Non-constitutional, or "statutory" *Booker* error, however, requires a less demanding standard of review. *United States v. Mathenia*, 409 F.3d 1289, 1291-92 (11th Cir. 2005) (per curiam). A

"non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the [sentence], or had but a very slight effect. If one can say with fair assurance . . . that the [sentence] was not substantially swayed by the error, the [sentence] is due to be affirmed even though there was error." *Id.* at 1292 (quotations and citations omitted). Nevertheless, this standard is as difficult for the government to meet as it "is for a defendant to meet the third-prong prejudice standard for plain error review." *Id.* (citations omitted).

The base offense level for a violation of 21 U.S.C. § 846 involving 16.25 kilograms of MDMA (65,000 pills) is 34.[4] *See* U.S.S.G. § 2D1.1(c)(3) (2004), Drug Equivalency Table. The district court, however, held Michtavi responsible for all 182.2 kilograms of MDMA seized, which corresponds to an offense level of 38. *See id.* § 2D1.1(c)(1). It is uncontroverted that Michtavi never admitted to responsibility for 182.2 kilograms of MDMA, and that the amount was not proven to the jury beyond a reasonable doubt. With a criminal history category of I, an offense level of 38 placed Michtavi's sentence in a 235-240 month guideline range, as opposed to the 151-188 month range called for by an offense level of 34. *See id.*

---

[4] The Government considered Michtavi accountable for all 182.2 kilograms of MDMA (approx. 800,000 pills) seized in the New York drug bust. Michtavi, however, argued that he should be held responsible only for 16.25 kilograms of MDMA (65,000 pills), because that is the amount of MDMA for which Cohen and one PatricioVives were held responsible–and those two people were the only "nexus" between Michtavi and the Ecstasy pills.

§ 5G1.1(c)(1), Sentencing Table; 21 U.S.C. § 841(b)(1)(C). The district court, applying the Guidelines as mandatory, sentenced Michtavi to 240 months. Thus, both constitutional and statutory *Booker* error occurred. The Government has raised no argument, other than an erroneous assertion that Michtavi waived any claim to constitutional *Booker* error, for finding the constitutional error harmless beyond a reasonable doubt. As the Government has not carried its burden, we vacate Michtavi's sentence and remand for resentencing.[5]

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[5] Thus, we need not reach the effect of the statutory *Booker* error.