[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14911
Non-Argument Calendar

_____

D. C. Docket No. 07-00523-CR-2-KOB-TMP


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRAD LAMONT SMITH,

Defendant-Appellant.


_____

No. 08-14919
Non-Argument Calendar

_____

D. C. Docket No. 07-00523-CR-KOB-TMP


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER LAFRANCE SMITH,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(November 10, 2009)

Before EDMONDSON, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, brothers Brad Lamont Smith and Christopher

LaFrance Smith appeal their convictions for firearms offenses, 18 U.S.C. §§

922(g)(1), 924(c), and for armed robbery of a United States post office, 18 U.S.C.

§ 2114. No reversible error has been shown; we affirm.

The Smiths' appellate challenges involve the admission of (1) post-arrest

phone conversations between Brad and his sister, Adrian Adams, about Brad's

desire to prevent a key government witness from testifying, and (2) Adams's

testimony about what these conversations meant.[1] The government introduced this

evidence to show Brad's consciousness of guilt. We review a district court's

---

[1]In the conversations, Brad refers to "cooking a steak." In her testimony, Adams states that Brad wanted her to talk to their brother, Marlow, "about cooking a steak" and that she understood these words to mean to harm or kill a certain government witness.

evidentiary rulings for an abuse of discretion. <u>United States v. Eckhardt</u>, 466 F.3d 938, 946 (11th Cir. 2006).

Brad argues that the government gave inadequate pretrial notice of its intent to use the conversations and testimony in violation of Fed.R.Evid. 404(b); and this lack of notice prejudiced his ability to present a defense. Under Rule 404(b), evidence of uncharged "crimes, wrongs, or acts" may be admissible for certain limited purposes "provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

Here, that (1) the conversations at issue did not occur until the weekend before trial, (2) the government confirmed the threatening nature of the conversations only after the first day of trial had concluded, and (3) the government could not have obtained this evidence earlier through the exercise of due diligence, is undisputed. Brad also was able to review the tapes before Adams's testimony. We conclude that these conditions -- coupled with the government's prompt notice upon learning about the threatening nature of the evidence -- constitute good cause excusing the government's lack of pretrial notice; and the district court abused no discretion in admitting the evidence despite

3

the lack of pretrial notice.[2]

Brad also contends that the recorded conversations were subject to exclusion because of their low probative value: they were ambiguous, did not support an inference of consciousness of guilt, and were cumulative of Adams's testimony. Brad also argues that the probative value of Adams's testimony was outweighed by its prejudice.

We have concluded that "[c]ourts may consider evidence of threats to witnesses as relevant in showing consciousness of guilt under Rule 404(b)." United States v. Baker, 432 F.3d 1189, 1220 (11th Cir. 2005) (internal quotation and citation omitted). Prior bad act evidence, such as witness threats, must meet these three requirements to be admissible: (1) "the evidence must be relevant to an issue other than defendant's character;" (2) "the government must offer sufficient proof so that the jury could find that defendant committed the act;" and (3) the risk of undue prejudice must not outweigh substantially the probative value. United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008); see also Fed.R.Evid. 403. We have noted that the admissibility of witness threats is "a close call" because the potential prejudice "may be great." Baker, 432 F.3d at 1220-21.

---

[2]Brad did not object to this evidence on pretrial notice grounds in the district court. But the court's decision to excuse the government's lack of pretrial notice is supported under either a plain error or abuse of discretion standard.

Despite the potential prejudicial value of this evidence, we conclude that the district court abused no discretion in admitting it. The government offered the evidence only for the limited purpose of showing Brad's consciousness of guilt, and not to prove his bad character. While Brad argues that the conversations inherently were ambiguous and that Adams's corroborating testimony about their meaning could not be tested in a meaningful way, we "defer to the district court's determination that the [recordings and corroborating] testimony [were] credible enough to allow a jury to find that the [threat] occurred." United States v. Brazel, 102 F.3d 1120, 1154 (11th Cir. 1997) (quotation and citation omitted).

And many factors in Brad's case minimized the risk of undue prejudice. The court gave a limiting instruction to the jury that it could consider the evidence only on whether it indicated consciousness of guilt and admonished the jury that it was their responsibility to decide "whether to believe [the] testimony and what weight, if any, to give it." See United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) (considering whether the court gave an appropriate limiting instruction in balancing the degree of prejudice against probative value). In addition, Brad created doubt about "whether a threat was actually made" by eliciting Adams's testimony on cross-examination that the conversations did not contain explicit threats of harm to anyone. See Brazel, 102 F.3d at 1154. Given these things and

that the balancing test of Rule 403 favors admissibility, see United States v. Dodd, 347 F.3d 893, 897 (11th Cir. 2003), we conclude that no undue prejudice resulted from the admission of this evidence.

Christopher argues that the district court's admission of the evidence against Brad violated Christopher's right to a fair trial because its admission created "spillover prejudice" against him, which the court's limiting instructions could not cure. Where, as here, evidence of an attempt to threaten or harm a witness is admissible under Rule 404(b) against the defendant who made the threat, the district court still must balance its probative value against the risk of undue prejudice to uninvolved codefendants. Baker, 432 F.3d at 1220-21.

Here, the district court -- on three separate occasions -- explicitly instructed the jury that it was to consider the evidence only about Brad's consciousness of guilt and that it was not to consider the disputed evidence "in any regard as to" Christopher. And the court received the jury's affirmative response when it asked whether each member could "separate out this evidence" on each defendant. See United States v. Gonzalez, 703 F.2d 1222, 1224 (11th Cir. 1983) (the law assumes that jurors follow their instructions, and "the decision as to whether the jury can sort out the evidence relevant to each defendant is firmly committed to the discretion of the trial court"). We reject Christopher's argument that this limiting

instruction did not adequately cure any prejudice. <u>See</u> <u>id.</u> (concluding that the district court abused no discretion by admitting one defendant's threat against a witness under Rule 404(b), where it instructed the jury that it could only consider the evidence against the defendant who made the threat).

AFFIRMED.