[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13787
_____

D.C. Docket No.  3:12-cr-00052-HES-JBT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL S. KRUSE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 10, 2015)

Before MARTIN and ANDERSON, Circuit Judges and MORENO,* District
       Judge.

PER CURIAM:

_____

* Honorable Federico A. Moreno, United States District Judge for the Southern District of
Florida, sitting by designation.

We have had the benefit of oral argument in this case, and have carefully studied the briefs and relevant parts of the record.  We conclude that the judgment of the district court should be affirmed.  We discuss in turn the challenges raised by appellant on appeal.

Appellant argues that the district court abused its discretion in failing to grant his motion for a mistrial because the prosecutor elicited answers from the appellant's brother, David Kruse, which might have left the jury with the impression that the defense team knew about appellant's plan to kill Amy but did nothing about it.  The relevant facts are as follows.  On direct examination of David, the prosecutor elicited the fact that  David had told Pinkham, an investigator for the defense team, that his brother, the appellant, was intending to go as far as to kill Amy.  The defense made no objection to this brief testimony.  Then on cross-examination, appellant's attorney explored that fact extensively, repeatedly eliciting from David the fact that he did say that to Pinkham, and precisely when he did so.

The government argues that its questions to David had a proper purpose to demonstrate David's credibility and lack of complicity in the criminal plan.  Moreover, the government argues that the extensive cross-examination by appellant's attorney – repeatedly eliciting the same facts – constitutes invited error.  Or at the least, the government argues that the failure of appellant's attorney to object contemporaneously to the government's questions to David, plus the

2

appellant's attorney's own actions repeatedly eliciting the same facts, means that this court should review the district court's subsequent denial of the motion for mistrial only for plain error.  We agree that appellant must surmount the hurdle of plain error review, and we cannot conclude that the appellant has demonstrated plain error.  Appellant's suggestion that the jury would infer that Pinkham and the defense team would sit on knowledge of an on-going attempt to kill a witness and do nothing to stop it is pure speculation. Moreover, it is clear that the jury did know that Amy had been warned of the threat on her life.  It is at least as likely, if not more likely, that the jury would infer that Pinkham and the defense team would have complied with their ethical duty to report any knowledge they had of an on-going conspiracy to kill Amy.  Further undermining the likelihood that the jury would have thought that the defense team sat on such knowledge is the fact that Amy testified before the jury that Pinkham was a "wonderful gentleman."  Finally, even assuming arguendo that the district court should have sua sponte intervened to prevent David's answer to the prosecution's initial questioning about this, or sua sponte given a curative instruction, the evidence of appellant's guilt was overwhelming, and any error is harmless.

We turn next to appellant's challenge to the district court's ruling admitting over appellant's objection the testimony of several victims of appellant's fraudulent investment scheme.  Appellant argues that the impact of the victim's losses – e.g., that their life savings were wiped out, that one victim could not pay

3

the medical bills, etc. – was irrelevant to the elements of the criminal fraud. The government responds that such evidence was relevant to the element of the materiality of the appellant's misrepresentations. We agree such evidence can be relevant to the materiality of appellant's misrepresentations concerning the safety of the investment for retirement funds, and also relevant to these victim's reliance on appellant's misrepresentations. We are troubled by the extensive amount of such evidence that the prosecutor elicited. However, even assuming arguendo that the prejudice with respect to some of that evidence might have outweighed its probative value, we believe that any error was harmless in light of the overwhelming evidence here, and the fact that such evidence was not emphasized by the prosecutor in closing argument.

Finally, appellant argues on appeal that the district court was clearly erroneous in applying the sophisticated means enhancement. However, appellant fails to explain away, inter alia, the sophistication that the government asserts with respect to appellant's decision to channel investor funds through Equity Trust, a legitimate company in Ohio that is one of the largest custodians of self-directed IRA's. In any event, the district court was clear in its expressed intention that it would impose the same sentence even if the appellate court found error with respect to one or more of the enhancements, even if it meant going above a corrected guideline range.

For the foregoing reasons, the judgment of the district court is

4

AFFIRMED.

MARTIN, Circuit Judge, concurring:

I agree with the panel's opinion that the District Court did not plainly err when it denied Mr. Kruse's motion for a mistrial. I also agree that the District Court did not abuse its discretion when it applied the sophisticated-means enhancement at sentencing. The District Court did not abuse its discretion on this issue, despite the fact that I cannot formulate for myself a simpler wire fraud scheme to which that enhancement might apply.

I write separately about another issue in Mr. Kruse's case. I believe the District Court did abuse its broad discretion under Federal Rule of Evidence 403 when it allowed the victims of Mr. Kruse's fraud to testify at trial about the personal impact of losing their retirement savings. To the extent the panel suggests that allowing that evidence was proper, I respectfully do not agree. At the same time, any error in admitting this evidence was harmless, so I arrive at the same judgment entered by the panel and concur in it.

Mr. Kruse was found guilty of conspiring to commit mail and wire fraud, see 18 U.S.C. § 1349, wire fraud, see id. § 1343, attempting to kill a witness, see id. § 1512(a)(1)(A), and using an interstate-commerce facility with the intent to procure a murder for hire, see id. § 1958(a). During his trial, the government brought thirteen fraud victims to testify about their losses. Their testimony included details about the impact of the losses on their personal lives. See, e.g., Trial Tr. 128, ECF No. 196 ("Q: And what did this money represent to you? A:

6

My future.  I really—that was what I depended on.  I was trying to buy a house.  And I've lost my house, and I am barely making it renting.  I don't have any money.  And so I've had other people try to help me, but I don't have any money.  [The fraud] took everything I had."); id. at 165 (stating that the fraud left her "unable to continue [her] mortgage payments . . . because all [her] savings [were] gone and there was nothing but [her] widow's benefit from the Social Security and the small retirement that [her] dead husband has coming to [her] now"); Trial Tr. 116, ECF No. 197 ("I have—I work and I was going to be retiring in that next year, and I need to keep working."); id. at 162 ("Q: Where did that money come from?  How did you earn that?  A: By my service in the Navy.  I—  Q: How long did it take you to save that? . . . About ten years?  A: At least, yes.  Q: And what did that represent to you, sir?  A: Me being able to take care of my family in the future.  I have no life investment after this.").  Mr. Kruse's attorney entered a standing objection to that testimony as "just an appeal to the emotions to say that [they had] been hurt by [the losses]," but the District Court refused to exclude it.  Mr. Kruse appeals that ruling here.

"This Court reviews a district court's evidentiary rulings for a clear abuse of discretion."  United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003).  Federal Rule of Evidence 403 permits the District Court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice."  The term "unfair prejudice" refers to "the capacity of some concededly relevant

evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997). The purpose of Rule 403 is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. King, 713 F.2d 627, 631 (11th Cir. 1983) (quotation omitted). I certainly recognize that "Rule 403 is an extraordinary remedy which the district court should invoke sparingly." United States v. Elkins, 885 F.2d 775, 784 (11th Cir. 1989). Also, "[t]he balance under Rule 403 should be struck in favor of admissibility." Id. "However, limits do exist regarding the quality and quantity of evidence that may be introduced." Dodds, 347 F.3d at 897.

In conducting the Rule 403 analysis, I first consider the relevance of the victim-impact evidence. "The standard for what constitutes relevant evidence is a low one: evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" United States v. Tinoco, 304 F.3d 1088, 1120 (11th Cir. 2002) (quoting Fed. R. Evid. 401). For Mr. Kruse's case, the government had the burden to prove mail and wire fraud. "The elements of mail and wire fraud are: (1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009). Because of the "difficulty in proving specific intent to defraud," this Court has adopted a "liberal

8

policy as to the admission of evidence tending to prove good or bad faith," including "any evidence remotely bearing on the question of fraudulent intent." United States v. Foshee, 606 F.2d 111, 112–13 (5th Cir. 1979) (quotation omitted).[1] This would typically include "evidence that loss was sustained as a result of the scheme," and "proof that [s]omeone was actually victimized by the fraud," even beyond losses to intended victims. Id. at 113 (quotation marks omitted).

However, the evidence admitted against Mr. Kruse was not about the victims' losses, but rather about the impact of those losses on the victims' personal lives. This "impact" testimony did nothing in the way of proving fraudulent intent on the part of Mr. Kruse. Whether Mr. Kruse intended to commit mail or wire fraud is neither more nor less likely because a victim had to postpone retirement or lost her house as a result. Therefore I do not come to the same conclusion as the panel that "such evidence can be relevant to the materiality of appellant's misrepresentations concerning the safety of the investment for retirement funds, and also relevant to these victim's reliance on appellant's misrepresentations." Panel Op. 4.

Even accepting the arguable relevance of the victim-impact evidence to the proof of the elements of wire fraud, the Rule 403 analysis next requires an

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

9

assessment of whether any probative value was substantially outweighed by the danger of unfair prejudice. Here, I believe it was. The victim-impact evidence appealed to the jury's sympathy.[2] The government excuses the admissibility of the evidence by saying: "Particularly next to some of the evidence the jury heard concerning Kruse's other crimes (his glee when he thought [an informant] was in the trunk awaiting her death; his instructions about the Christmas decorations; his torture plan involving a curling iron), the investors' testimony about their lost retirement savings must have sounded rather bland." This argument does not carry much force with me, because the jury was aware that the informant was never actually tortured or killed, and at the same time was well aware that the victims were testifying about <u>actual</u> harms they had suffered. But in any event, coming out on the short end of a blandness test does not equate to no prejudice under Rule 403.

I find the Third Circuit's opinion in <u>United States v. Copple</u>, 24 F.3d 535 (3d Cir. 1994) to be instructive. Copple was convicted of mail fraud and tax evasion. <u>Id.</u> at 538. The Third Circuit was presented with the question of whether the district court abused its discretion by allowing testimony from certain victim funeral directors about their losses and the impact those losses had on their lives. <u>Id.</u> at 544. Though the court held that evidence of losses was relevant, it went on

---

[2] Admission of the victim-impact testimony in this case is all the more worrisome because the government didn't need it. There was plenty of other clearly admissible evidence to show that Mr. Kruse conspired to commit mail and wire frauds.

10

to conclude that the "victim impact testimony went beyond anything that was reasonable to prove Copple's specific intent to defraud." Id. at 545. As the Court reasoned:

> Testimony such as this had either no, or very little, probative value and was unfairly prejudicial. We believe that it was irrelevant either for the purposes of proving that Copple had failed to make up the loss to the funeral directors or for any other reason. Even if there had been some marginal relevance to the testimony about the particular personal or professional impact the losses had on the funeral directors, its principal effect, by far, was to highlight the personal tragedy they had suffered as victims of the scheme. The testimony was designed to generate feelings of sympathy for the victims and outrage toward Copple for reasons not relevant to the charges Copple faced. It arguably created a significant risk that the jury would be swayed to convict Copple as a way of compensating these victims wholly without regard to evidence of Copple's guilt.

Id. at 546. I would like to see our court adopt the Third Circuit's rule in Copple, and hold that the District Court abused its discretion by allowing the victim impact testimony here.[3]

But my thoughts on this bring me to no different result than that arrived at by the panel, because I agree that "any error was harmless in light of the overwhelming evidence here." Panel Op. 4. "We will reverse a district court's evidentiary rulings only if the resulting error affected the defendant's substantial

---

[3] The government cites United States v. Cloud, 680 F.3d 396 (4th Cir. 2012), where the Fourth Circuit held that a district court did not abuse its discretion in admitting victim-impact testimony in a bank fraud case. Cloud purports to rely on Copple for the proposition that "victim-impact testimony was relevant to show intent to defraud in a mail fraud prosecution." Id. But Copple said the exact opposite: that although testimony about "the funeral directors' losses" themselves was relevant, "[s]ome of the victim impact testimony went beyond anything that was reasonable to prove Copple's specific intent to defraud." Copple, 24 F.3d at 545. In short, Cloud misread Copple, which I believe has the better rule.

11

rights." Dodds, 347 F.3d at 897. "We determine whether an error had substantial influence on the outcome by weighing the record as a whole, examining the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (citations and quotation marks omitted).

The evidence of Mr. Kruse's guilt was overwhelming, and not subject to reasonable debate. Just to name some of it: Mr. Kruse sent out letters stating that Yorkshire had 30 years of experience—a statement that was objectively untrue based on the date of the corporation's creation. His secretary testified that she had seen him signing other peoples' names on Equity Trust applications. The victims testified about their actual losses (the impact of the losses aside). And once he was indicted, Mr. Kruse plotted to have his secretary killed to prevent her from testifying. Most damningly, Mr. Kruse specifically admitted to the fraud both orally and in a written statement. I conclude that it "was highly probable [that Mr. Kruse] would have been convicted for violating the mail [and wire] fraud statute[s] even if the victim impact testimony had been excluded." Copple, 24 F.3d at 547.

I would therefore find that the District Court's error was harmless, and I concur with the panel's ultimate conclusion.

12