[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12269
_____

D.C. Docket No. 1:12-cr-00042-MP-GRJ-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERT BRANDON BILUS,

Defendant – Appellant.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 15, 2015)

Before ED CARNES, Chief Judge, and ROSENBAUM, Circuit Judge, and SMITH,[*] District Judge.

_____

[*] Honorable C. Lynwood Smith, Jr., United States District Judge for the Northern District of Alabama, sitting by designation.

SMITH, District Judge:

This is an appeal from convictions and sentences for receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  Those offenses and several state charges arose out of the following events.

## I.  FACTS

The High Springs, Florida, Police Department received a 911 call from a female resident at approximately 10:39 p.m. on Sunday, August 15, 2010.  The caller reported that a "suspicious" automobile bearing a University of Florida tag and driven by a white male had circled the block in her "little neighborhood" at least three times, and then stopped in a field behind her house.  She feared that it was not safe to exit her vehicle and walk with her children into their home.  ECF No. 28-2, at 2, 5.[1]

Officer Johnny Sheppard responded to the call.  He had been "born and raised" in High Springs and, thus, was familiar with the area and its high level of drug and crime activity.  ECF No. 150, at 3-4.  Officer Sheppard observed an

---

[1] "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e*., "Electronic Case Filing"). Bluebook Rule 7.1.4 allows citation to page numbers generated by the ECF header.  *The Bluebook:  A Uniform System of Citation*, at 21 (Columbia Law Review Ass'n *et al.* eds., 19th ed. 2010).

automobile matching the description received from dispatch sitting near the rear parking lot of a church.  He knew the congregation was not conducting worship services at that time of night, and that an air-conditioning unit recently had been stolen from the church.  The suspect vehicle pulled away at a lawful rate of speed when Officer Sheppard arrived on the scene, and he followed at a distance of approximately one car length.  When the automobile turned onto Northwest 225th Terrace, the driver failed to give a turn signal.[2]

Northwest 225th Terrace was not a frequently traveled roadway, because only about three houses were located along the street.  Officer Sheppard knew most of the residents, and he had not previously observed the suspect's automobile in that area.  Moreover, none of the residents on the street appeared to be expecting

---

[2] Florida law provides that:

> (1) No person may turn a vehicle from a direct course or move right or left upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal in the manner hereinafter provided, in the event any other vehicle may be affected by the movement.

> (2) A signal of intention to turn right or left must be given continuously during not less than the last 100 feet traveled by the vehicle before turning . . . .

> . . . .

> (5) A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318.

Fla. Stat. § 316.155 (ellipses supplied).

3

visitors, because no lights were on in any of the houses.  Further, very quickly after turning onto the street, the suspect's vehicle began to turn around.  Officer Sheppard initiated a traffic stop at that point, due to the driver's "failure to use a turn signal and the totality of the suspicious activity, those two reasons."  ECF No. 150, at 19.

When Officer Sheppard approached the stopped vehicle, he observed a "very young" black female in the front passenger seat wearing nothing but a t-shirt and holding her hands over her crotch.  *Id*. at 12-13.  The driver — who turned out to be the defendant, Robert Brandon Bilus — was sweating and appeared nervous.  The Incident Report subsequently filed by Officer Sheppard recorded that both Bilus and his young passenger

> acted suspicious and could not advise basic information.  Both parties knew the other person's name and *they gave different stories about where they were going*.  The juvenile was half naked with just a shirt on that covered her personal area.  Post Miranda, *the defendant advised that he had just met the victim online* and she told him she was 16 YOA.  He further advised that he picked the child up without the knowledge or permission of the child's parent.  The child advised that the defendant knew that she was at least 13 YOA, due to the profile online that list[ed] her age.  She also advised that she informed him of this information, while talking to him online.  Witness #1, the guardian of the child[,] advised that the defendant did obtain

4

permission to remove the child from the residence.[3]  She also advised that she has never met the defendant.  . . .

ECF No. 28-3, at 1-2 (alterations, emphasis, and footnote supplied).  Bilus was arrested at the scene for the state misdemeanor offense of contributing to the delinquency of a child.[4]

Detective James Madsen, the Commander of the "North Florida Internet Crimes Against Children Task Force," learned of the arrest the following day and obtained a warrant from a state court judge to search Bilus's residence.  The affidavit executed in support of the warrant application stated that Madsen had reason to believe that "a computer of unknown type and make [had been] used to communicate [with] and [to] facilitate the arrangements to travel and to meet a minor to facilitate unlawful contact[,] and that items used to perpetrate this act" would be found at Bilus's residence.  ECF No. 30-2, at 1 (alterations supplied).[5]  In

---

[3] This appears to be a typographical error in the affidavit, because all other evidence indicates that the guardian *did not give* defendant permission to remove the child from her residence.

[4] The Florida offense of contributing to the delinquency of a child occurs when any person "[c]ommits any act which causes, tends to cause, encourages, or contributes to a child becoming a delinquent or dependent child or a child in need of services."  Fla. Stat. § 827.04(1)(a) (alteration supplied).

[5] The Florida statute defining the offense of Traveling to Meet a Minor reads as follows:

Any person who travels any distance either within this state, to this state, or from this state by any means, who attempts to do so, or who causes another to

5

support of those assertions, Madsen described the circumstances of the arrest, including the fact that the twelve-year-old passenger stated that she and Bilus had communicated over the internet earlier that day,[6] noted that "electronic devices are

do so or to attempt to do so for the purpose of engaging in any illegal act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in other unlawful sexual conduct with a child or with another person believed by the person to be a child after using a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to:

> (a) Seduce, solicit, lure, or entice or attempt to seduce, solicit, lure, or entice a child or another person believed by the person to be a child, to engage in any illegal act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in other unlawful sexual conduct with a child; or

> (b) Solicit, lure, or entice or attempt to solicit, lure, or entice a parent, legal guardian, or custodian of a child or a person believed to be a parent, legal guardian, or custodian of a child to consent to the participation of such child in any act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in any sexual conduct,

commits a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 775.084.

Fla. Stat. § 847.0135(4).

[6] During the suppression hearing subsequently conducted in the district court, Madsen additionally testified that, because Bilus did not have any equipment on his person or in his automobile that would have enabled him to communicate with the victim in an internet chat room, it was "more than likely that [his] communication [with the female victim] was done from his residence." ECF No. 150, at 54 (alterations supplied). The district court judge acknowledged the possibility that Bilus could have conducted his chat with the victim in a public location, such as a café with free wi-fi connections, but he concluded, nevertheless, that it was "'fairly probable' that the chat occurred at the defendant's residence. . . . Common sense dictates that it is fairly probable that [Bilus] set up a furtive meeting with an underage girl at 10:40 p.m. in the privacy of his home rather than a public place." ECF No. 35, at 16-17 (alterations supplied). *See United States v. Perrine*, 518 F.3d 1196, 1206 (10th Cir. 2008) ("The

commonly used in connection with the exploitation of children," and observed that "child molesters also possess child pornography" as "a tool to be used to groom victims (as in this case), record their crimes, and to allow them to relive and extend their fantasies while the victim is not readily available." *Id*. at 3.[7]  Based upon such considerations, Madsen opined that "probable cause exists to believe that the items requested to be searched for are evidence of the exploitation of children by means of the possession of child pornography in violation of Florida Statutes and are concealed in the residence." *Id*. at 6.

The officers who executed the search warrant discovered thirty-seven files depicting child pornography (seven of which were videos) on the hard drive of a laptop computer located in Bilus's bedroom. *See*, *e.g*., ECF No. 117 ¶ 13.

Bilus was indicted by a federal grand jury in the United States District Court for the Northern District of Florida for one count of receiving child pornography in

---

observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases.") (quoting *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir.2005)) (other citations omitted).

[7] Madsen's affidavit actually asserted that "*the  majority of child molesters* also possess child pornography" (emphasis supplied), but he acknowledged during his testimony at the suppression hearing that such an assertion was erroneous, and that the actual statistic was approximately 20 or 21 percent. *See* ECF No. 150, at 36. The discrepancy would affect the weight that might be accorded the opinion, but not its admissibility.

violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1),[8] and one count of possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).[9]  Trial on those charges commenced on May 6, 2013, and a jury returned verdicts of "guilty" on both counts the following day.  Bilus subsequently was sentenced to the custody of the Bureau of Prisons for concurrent terms of 168 months for the offense of receiving child pornography, and 120 months for possession of child pornography.  Bilus later was convicted in state court proceedings for other offenses arising out of the August 15, 2010 traffic stop —

---

[8] 18 U.S.C. § 2252A(a)(2)(A) makes it a crime to "knowingly receive[] or distribute[] . . . any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer" (alterations supplied).  Section 2252A(b)(1) provides the penalty, *i.e.*, a fine and 5-20 years of imprisonment.  18 U.S.C. § 2252A(b)(1).

[9] 18 U.S.C. §§ 2252A(a)(5)(B) makes it a crime to

knowingly possess[], or knowingly access[] with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.  [Alterations supplied.].

Section 2252A(b)(2) provides the penalty, *i.e.*, a fine and a maximum of 10 years of imprisonment.  18 U.S.C. § 2252A(b)(2).

*i.e.*, interference with custody, lewd and lascivious battery,[10] and traveling to meet a minor[11] — and was sentenced to concurrent terms of five years for the first offense, and fourteen years for the latter offenses.

## II. MOTION TO SUPPRESS EVIDENCE OF TRAFFIC STOP AND SEARCH WARRANT

Bilus filed pretrial motions to suppress evidence obtained during his vehicle stop, and to invalidate the search warrant. Both motions were denied following an evidentiary hearing. An appellate court reviews a district court's findings of fact on denial of a motion to suppress evidence for clear error, and the district court's application of law to the facts *de novo*. *United States v. Tate,* 586 F.3d 936, 942 (11th Cir. 2009). The issue of whether an affidavit executed in support of a search warrant established probable cause is reviewed *de novo. United States v. Mathis*, 767 F.3d 1264, 1275 (11th Cir. 2014).

The district court found that the traffic stop was supported by Bilus's failure to use a turn signal and the "totality of the circumstances," which included the following considerations:

---

[10] A person commits "lewd and lascivious battery" under Florida law by "[e]ngaging in sexual activity with a person 12 years of age or older but less than 16 years of age." Fla. Stat. § 800.04(4)(a)(1) (alteration supplied). "Sexual activity" is defined as "the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." Fla. Stat. § 800.04(1)(a).

[11] *See supra* note 6.

Here, the officer testified that he knew the area to be a high crime area, with narcotics sales, shootings, and burglaries including one involving a church near the field where the defendant stopped. He also was told of the car's suspicious driving pattern:  circling (multiple times) a neighborhood where the officer knew that the car did not belong to any of the residents; then stopping for a while in a field near an empty church at 10:40 p.m.; and then leaving the area without visiting any of the residences on the street.  Also, the officer observed the car turn onto a small road the officer believed to be a dead-end, and testified that he knew the car was not associated with any of the residents of the street.  The car then proceeded to suddenly turn around.  Taken together, these circumstances provide more than a reasonable, articulable suspicion based on objective facts that the car's owner was engaged in, or was about to engage in, criminal activity. An investigative stop under such circumstances does not violate the Fourth Amendment.

ECF No. 35, at 10-11.  The district court also held that the search warrant had been "properly applied for and issued," *id.* at 11, based upon the following findings:  the warrant affidavit contained sufficient facts to support each element of the state offense of traveling to meet a minor; the search for child pornography was sufficiently related to the charged state offense; any errors or misstatements in the warrant affidavit were immaterial;[12] there was a sufficient connection between the

---

[12] As the district court observed in its order addressing Bilus's motions to suppress, the defendant did

> point out one clear error in the Search Warrant affidavit, which the detective admitted in his testimony.  The Affidavit stated that "Robert Brandon Bilus was charged with unlawful contact with a minor a misdemeanor level charge in violation of Florida Statutes."  This statement is misleading [because], as previously noted, Robert Brandon Bilus at the time was charged with the

state offense alleged in the warrant affidavit and Bilus's residence;[13] and, the

warrant application was not overbroad. *Id*. at 12-17.

After *de novo* review, the denial of defendant's motion to suppress will be

affirmed for the reasons stated by the district court.

### III.  ADMISSION OF EVIDENCE RELATED TO APPELLANT'S STATE COURT CHARGES

Bilus filed a motion *in limine* to exclude evidence of other crimes, wrongs,

or acts, *see* Fed. R. Evid. 404(b),[14] and asked the district court to prevent the

---

misdemeanor offense of Contributing to the Delinquency of a Child (Minor).  The Court finds that while this is an error, excluding this statement would not affect whether probable cause was properly found by the state court judge.  Again, whether or not "unlawful contact" actually occurred is not relevant to whether defendant traveled for the purpose of engaging in such contact.  Thus, even if the affidavit had correctly listed the crime as contributing to the delinquency of a minor (which does not contain the term "unlawful contact" in it), sufficient other facts in the affidavit support the claim that he traveled with the purpose of engaging in sexual contact with the child.  Also, while the affidavit does not artfully cite to the various studies showing the links between child pornography and child molestation, Congress and the Courts have consistently found that such links exist, as noted above.  The Court finds, therefore, that any misstatements relating to these studies were not such that probable cause would be lacking if they were correctly made.

ECF No. 35, at 15-16 (record citations omitted, alteration supplied).

[13] In response to the argument of Bilus's attorney that the search warrant affidavit provided "no basis for the conclusion" that the computer located at the defendant's residence was used to communicate with a minor because he "might have participated in the online chat admitted to by the victim at a coffee house or internet café," the district court held that "[c]ommon sense dictates that it is fairly probable that defendant set up a furtive meeting with an underage girl at 10:40 p.m. in the privacy of his home rather than a public place." *Id*. at 16-17 (alteration supplied).

11

prosecution "from referencing in any fashion, evidence or facts related to an uncharged allegation of traveling to meet a minor, allegedly occurring on August 15, 2010." ECF No. 35, at 1.[15] That motion was denied by oral order during the pretrial conference. Bilus's attorney then inquired whether there would be a limit on what "evidence of the issues out of High Springs that the government is going to be permitted to go into." ECF No. 151, at 18. The district judge responded:

> Well, I don't know, because as I understand it and what I'm ruling is that you have got to keep these things. They are connected and you have to tell one to explain the other and how much that takes. How much evidence, I don't know. If you start doing it, if you object, I'll rule.

*Id.*

During opening statements, the prosecutor described the events of August 15, 2010, including the traffic stop and discovery of Bilus in the car with the virtually naked twelve-year-old girl. The prosecutor also stated that Bilus acknowledged conversing with the victim online, and driving from Gainesville to

---

[14] Federal Rule of Evidence 404(b) addresses the subject of evidence of crimes, wrongs, or acts *other than* (*or not part of*) the crime(s) charged in the indictment for which the defendant is standing trial. The pertinent portions of the rule state that such evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but add that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

[15] Bilus's reference to the allegation being "uncharged" must refer to the fact that he was not charged with that offense in the *federal indictment*. Instead, that offense was the subject of a *state court* charge. *See* ECF No. 117, at 13.

12

High Springs to meet her in person.[16]  Then he described how Detective Madsen used the information gathered during the traffic stop to obtain a search warrant for Bilus's residence.

Detective Madsen testified about how he learned of the traffic stop from the High Springs Police Department and why he decided to obtain a search warrant. He stated that the process of obtaining a warrant in this case was "rapid" and "expedited," because Bilus had been "booked in on a misdemeanor."  ECF No. 153, at 33.  Bilus's attorney moved for a mistrial based upon Madsen's reference to Bilus's arrest for a state misdemeanor, but the district court denied the motion. Bilus's attorney asked the prosecutor if he intended "to go any further down that road," and the prosecutor responded, "No."  *Id*. at 33-34.

On cross-examination, Bilus's attorney asked Madsen to identify his resume, and Madsen responded:  "This is what I wrote up to comply with a state order.  I don't have to but it is something I filed *for the state case at your request*."  ECF No. 154, at 28 (emphasis supplied).  Bilus's attorney moved for a mistrial based upon Madsen's reference to the state case, but the motion was denied.

---

[16] The driving distance between Gainesville and High Springs, Florida, appears to be approximately 23 miles.  *See*, *e.g*., http://www.mapquest.com/#a42a5503fd2cfefd29f43c6d (last visited Aug. 18, 2015).

13

The district court's evidentiary rulings are reviewed for "clear abuse of discretion." *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003). As this Court observed in *United States v. McLean*, 138 F.3d 1398 (11th Cir. 1998),

> Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However,
>
> > [e]vidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.
>
> *United States v. Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995). "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).

*McLean*, 138 F.3d at 1403 (alterations in original).

Bilus argues that, because he did not challenge the lawfulness of the search of his residence *at trial* — as distinguished from the objections he lodged in *pre-trial motions* — the government had no reason to mention the state charges or the facts leading to them. That argument is not persuasive. Evidence about the events

14

of August 15, 2010, and the state charges growing out of those events, is inextricably intertwined with the federal charges of receiving and possessing child pornography. Bilus used the same computer to receive and view child pornography as he did to contact the twelve-year-old victim and arrange their meeting in High Springs. The computer recovered from Bilus's residence was still on when it was seized, and it showed that Bilus was logged into the same online teen chat room that he had used to communicate with the twelve-year-old victim. Bilus had logged in to the chat room under the username "Robert," and a photograph of him was depicted next to the username. ECF No. 153, at 40-43. That evidence demonstrated two important points that the government had to prove: *i.e.*, that the computer seized by agents belonged to Bilus; and, that he had used it. In short, Bilus's arrest on the night of August 15, 2010, on Northwest 225th Terrace in High Springs, Florida, is part of the story leading to the search of his Gainesville residence and the seizure of the laptop computer containing child pornography. The linkage between the state and federal offenses is clear, and the district court did not abuse its discretion in concluding that the evidence was inextricably intertwined. Moreover, the district court did not err in failing to make more detailed findings about whether the prejudicial effect of the evidence was

15

substantially outweighed by its probative value.  *See* Fed. R. Evid. 403.[17]  Given

the inextricable connections between the offenses, there is no reason to believe that

Bilus suffered any undue prejudice, and the district court adequately articulated its

findings.[18]

## IV.  ADMISSION OF ALLEGEDLY PREJUDICIAL IMAGES AND VIDEOS

During trial, the government offered eleven images and five videos removed

from the hard drive of Bilus's computer to establish that he had received and

possessed child pornography.  Even though all five of the videos were admitted

into evidence, only five-second clips from two of them were played for the jury.

Bilus objected to the admission of that evidence, arguing that its cumulative

probative value was substantially outweighed by the risk of unfair prejudice under

Federal Rule of Evidence 403.

Bilus's attorney also questioned whether "two or three" of the eleven images

offered by the government actually constituted child pornography, but he

---

[17] "The court may exclude relevant evidence if its porbative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

[18] Even if the evidence about Bilus's arrest was not inextricably intertwined with the evidence supporting his federal charges, it likely would have been admissible under Federal Rule of Evidence 404(b), because it was probative of the issues of intent, identity, absence of mistake, lack of accident, and motive.  *See* Fed. R. Evid. 404(b).

16

acknowledged that the other eight or nine were pornographic.  ECF No. 153, at 48.

The attorney suggested that he would not have objected if only "three or five" of

the images had been shown to the jury, due to the government's need to prove its

case for receipt and possession of child pornography, but argued that showing *all*

*eleven* images and *any* of the videos constituted prejudicial error.  *Id.*  The district

court overruled the objections, but did not view the images or videos before doing

so.

Bilus contends, based upon the Third Circuit's decision in *United States v.*

*Cunningham*, 694 F.3d 372 (3d Cir. 2012), that the district court's admission of the

eleven images and two, five-second video clips without first viewing them was an

abuse of discretion.[19]  The district court in *Cunningham* allowed the prosecutor to

play for the jury a total of two minutes and thirteen seconds of excerpts from seven

videos that had been seized from the defendant's computer.  The videos depicted

acts of manual and oral stimulation of male and female genitals, as well as vaginal

and anal intercourse, all involving minors.  Two of the videos depicted bondage

and violent sexual acts.  *Id.* at 380-82 and n.11.  The Third Circuit found that,

"speaking generally, a district court should personally examine challenged

_____

[19] *See Dodds*, 347 F.3d at 897 (holding that the district court's evidentiary rulings are reviewed for an abuse of discretion).

17

evidence before deciding to admit it under Rule 403," but declined to adopt a bright-line rule requiring such an examination in all cases. *Id.* at 386-87. Even so, the Third Circuit held that, "*under the circumstances of this case*, the [district court] abused its discretion by admitting the videos without first viewing them." *Id.* at 383 (emphasis and alteration supplied). Because of that abuse of discretion, the district court's "underlying Rule 403 determination [was] not entitled to the full range of deference that [the Third Circuit] would normally give to it on appeal." *Id.* at 388 (alterations supplied). The *Cunningham* Court went on to hold that the "law of diminishing marginal returns" reduced the probative value of each video clip successively introduced after the requisite elements of the offense had been established.[20] The Third Circuit concluded that the "violent and sadistic character

---

[20] Specifically, the Third Circuit observed that:

Even though the two sets of videos were probative, . . . , the law of diminishing marginal returns still operates. The probative value of each clip was reduced by the existence of the clips before it. Once one video excerpt from each of the two videos was shown, the fact being proven — *i.e.*, that the person distributing, receiving, and possessing that pornography would know that it contained images of real minors engaging in sexually explicit activity — may well have been established. As a result, after one excerpt from each video was displayed, the probative value of the remaining excerpts became diminished because knowledge of distribution, receipt, and possession had already been established in some degree by the prior video excerpts. Thus, any of the three excerpts from the first video would have diminished probative value if one or two of the other video excerpts from the first video had already been shown. Likewise, any of the four excerpts from the second video would have diminished probative value if one or two of the other video excerpts from the second video had already been shown.

18

[of the video clips depicting bondage and violence] likely created 'disgust and antagonism' toward Cunningham which risked 'overwhelming prejudice' toward him." *Id.* at 390-91 (quoting *United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993)) (alteration supplied). For such reasons, the Third Circuit held that the district court's admission of the bondage clips was an abuse of its discretion and

---

The question in the end, of course, is whether the probative value of the clips shown was substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. As Rule 403 clarifies, a party is not protected from all prejudice — only unfair prejudice. *See* Fed. R. Evid. 403; *see United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) ("It must always be remembered that unfair prejudice is what Rule 403 is meant to guard against. . . .").

Here, the aggregate risk of unfair prejudice was tremendous. Although the videos in question were not presented to this Court, the detailed descriptions we have received show that at least two of them should clearly have been excluded under Rule 403. Those two video excerpts, part of the second set of video clips, portray bondage or actual violence. Although all of the video excerpts are described as portraying deeply disturbing images, the descriptions of the depraved and violent sexual acts in Excerpt 1 and Excerpt 3 from the second video, . . . let alone the actual video images, are enough to "generate even more intense disgust" and cause us to conclude that the videos themselves surely "outweigh[ ] any probative value they might have" as to the charges of knowingly distributing, receiving, and possessing child pornography. [*United States v. ]Curtin*, 489 F.3d [935,] 964 [(9th Cir. 2007)] (Kleinfeld, J., concurring); *see* [*United States v.*] *Loughry*, 660 F.3d [965,] 974[ (7th Cir. 2011)] (citing Judge Kleinfeld's concurrence in *Curtin* for the proposition that "video excerpts shown to the jury . . . [of] men raping and ejaculating in the genitals of prepubescent girls . . . have a strong tendency to produce intense disgust").

*Cunningham*, 694 F.3d at 389-90 (last alteration in original, other alterations supplied, footnote omitted).

reversed the conviction.  *Cunningham*, 694 F.3d at 392-93.  Even so, the Court was

careful to note that

> a district court "is not required to scrub the trial clean of all evidence
> that may have an emotional impact." [*United States v.*] *Ganoe*, 538
> F.3d [1117,] 1124 [(11th Cir. 2008)] (citation and internal quotation
> marks omitted).  Thus, we do not hold that the admission here of
> video excerpts or other images was *per se* improper. Indeed, courts
> are in near-uniform agreement that the admission of child
> pornography images or videos is appropriate, even where the
> defendant has stipulated, or offered to stipulate, that those images or
> videos contained child pornography.  *See, e.g., United States v.
> Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009); *United States v. Schene*,
> 543 F.3d 627, 643 (10th Cir. 2008); *Ganoe*, 538 F.3d at 1123-24;
> *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir.
> 2008); *United States v. Sewell*, 457 F.3d 841, 844 (8th Cir. 2006);
> *Dodds,* 347 F.3d at 898-99.  We also decline to adopt a bright-line
> rule on the number of video excerpts that can be shown or on the
> maximum length of time that video excerpts can last.

*Cunningham*, 694 F.3d at 391 (alterations supplied).

Of course, *Cunningham* is only persuasive authority.  Moreover, that opinion

explicitly declined to establish a bright-line rule that a district court must view all

pornography images and/or videos before publishing them to the jury.   The

decision also is distinguishable.  The prosecution in this case played a total of only

ten seconds of clips from two of the five videos.  There were no duplicate clips

from either video, as in *Cunningham*, and the total length of clips played here was

20

far less than in that case.  Finally, none of the video clips shown to the jury in the present case involved acts of bondage or violent sexual acts.

Rather than focusing on distinguishable, non-binding authority, it is more helpful to examine Eleventh Circuit precedent.  In *United States v. Alfaro-Moncada*, 607 F.3d 720 (11th Cir. 2010), this Court held that the trial court did not abuse its discretion in allowing the jury to view five still images of child pornography found on DVDs seized from the defendant, even though the defendant had stipulated that the DVDs contained child pornography.  *Id.* at 734.

> Admission of the five still images from the DVDs served valid purposes.  *See Old Chief v. United States*, 519 U.S. 172, 190, 117 S. Ct. 644, 655, 136 L. Ed.2d 574 (1997).  Those images proved that the DVDs actually contained child pornography, although it is true that Alfaro-Moncada stipulated to that fact. *See id.* at 186–87, 117 S. Ct. at 653 ("[The] standard rule [is] that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that *a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.*").  They also tended to show that Alfaro-Moncada knew he was in possession of child pornography, a fact that he did not stipulate.  Even if showing the images to the jury created some risk of injecting emotions into the jury's decision-making, *see id.* at 180, 117 S. Ct. at 650, it was not an abuse of discretion for the district court to decide that the risk did not substantially outweigh the still images' probative value.  That is especially true since the jury was only shown a small number of the images on the DVDs — only 5 out of 4,650.  *See Dodds*, 347 F.3d at 899 (finding no abuse of discretion where images had multiple probative purposes, the district court took precautions to prevent unfair prejudice, and only 66 of 3,400 images were shown to the jury).

*Alfaro-Moncada*, 607 F.3d at 734 (alterations in original, emphasis supplied).

The images and videos shown to the jury in this case were probative of Bilus's receipt and possession of child pornography and, therefore, necessary for the prosecution to prove its case. The admission of eleven images and only ten seconds of video clips depicting pornographic images of minors did not cause unfair prejudice. Any prejudice that may have resulted from the publication of the images was outweighed by the probative value of the images to the prosecution's case.

We also specifically decline to adopt a requirement that the district court must view the allegedly prejudicial images before allowing them to be shown to a jury. Moreover, there is no indication that the district court lacked sufficient information about what the images portrayed to make a decision about their probative value and potential to cause undue prejudice.

## V. ADMISSION OF TESTIMONY ELICITED ON CROSS-EXAMINATION OF THE GOVERNMENT'S EXPERT WITNESS

During trial, and in response to a question posed by Bilus's attorney on cross-examination, Detective Madsen testified that Bilus's computer contained evidence indicating he had engaged in online chats about viewing child pornography. Bilus's attorney moved to strike the testimony pursuant to Federal

22

Rule of Criminal Procedure 16, because it had not been disclosed prior to trial.[21]

The motion was denied because Madsen's testimony was elicited on cross-examination, and not during the government's case-in-chief. *See* Fed. R. Crim. P. 16(a)(1)(G) ("At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence *during its case-in-chief at trial*.") (emphasis supplied). Bilus also was not entitled to notice of Madsen's testimony or report under Rule 16(a)(1)(F),[22] because "forensic

---

[21] During the second day of trial, Detective Madsen, who was on the stand as the government's expert witness, was asked by Bilus's attorney whether there was a known source for any of the images found on Bilus's computer. The attorney apparently expected the answer to be "no," but Madsen testified that he had recently found a "lead" on the potential sources of the images because of "communication logs that were more recently found." Bilus's attorney objected, because the communication logs were not addressed in Madsen's expert report, and had not otherwise been disclosed to the defense. Madsen testified that, during his preparation for trial, he had located on the hard drive of Bilus's computer "a lot of chat files that [he] previously had either not found or due to the amount, overlooked." ECF 154, at 38 (alteration supplied). Based upon his review of those recently discovered files, Madsen testified that there was evidence that Bilus had engaged in a chat about viewing child pornography. Madsen also produced a six-page supplemental expert report addressing that material, but the prosecution acknowledged never having disclosed the supplemental report to the defense prior to trial. The prosecution did, however, provide Bilus with the opportunity to have Bilus's laptop examined by a forensic expert. Bilus took advantage of that opportunity, but his expert's examination did not reveal the files addressed in Madsen's supplemental report. *See id.* at 38-68.

[22] The relevant portion of Federal Rule of Criminal Procedure 16 provides that:

Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination *and of any scientific test or experiment* if:

(i) the item is within the government's possession, custody, or control;

23

examination of a computer does not constitute a scientific test or experiment." ECF No. 53, at 3. Instead, the report was "simply a report prepared for trial preparation," and was exempted from disclosure pursuant to Rule 16(a)(2). *Id.*[23] Finally, the trial court held that considerations of prejudice and fundamental fairness did not require disclosure of the report because

> the hard drive which contained the chat logs was made available to defendant's experts on multiple occasions, and they had the opportunity to discover the chat logs. Defendant complains of prejudice because he would not have structured his defense in the manner that he did had he known of the evidence of chats discussing child pornography. Defendant had multiple chances to have his experts conduct forensic analyses of the computer. He does not have the right to have the government's theory of the case handed to him. Any prejudice he suffered was from his failure to check the veracity of his assertion that there were no records of any chats.

---

> (ii) the attorney for the government knows — or through due diligence could know — that the item exists; and
>
> (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed. R. Crim. P. 16(a)(1)(F) (emphasis supplied).

[23] The relevant portion of Federal Rule of Criminal Procedure 16 provides that:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(2).

24

ECF No. 53, at 5.

Bilus now asserts that the denial of his motion to strike was an abuse of the trial court's discretion.  *See Dodds*, 347 F.3d at 897 (holding that the district court's evidentiary rulings are reviewed for an abuse of discretion).  That argument is not persuasive, and the district court's denial of the motion to strike will be affirmed for the reasons stated by that court.

## VI.  MOTIONS FOR JUDGMENT OF ACQUITTAL

Bilus filed motions for judgment of acquittal at the conclusion of the government's case-in-chief, and at the end of all of the evidence, but both motions were denied.  Bilus also filed post-trial motions for judgment of acquittal, for a new trial, and for release from custody pending sentencing, but all motions were denied after a hearing.

On appeal, however, the government concedes that Bilus's conviction for the offense of possession of child pornography alleged in Count Two should be vacated because, under the facts of this case, that crime is a lesser-included offense of the crime of receiving child pornography alleged in Count One.  *See* Appellee's Brief, at 50 (citing *United States v. Bobb*, 577 F.3d 1366, 1374 (11th Cir. 2009) (holding, on the basis of the plain text of the statute and relevant legislative history,

that there was no "clear indication" of a Congressional intent "to impose multiplicitous punishment for 'receipt' and 'possession' of child pornography")). Accordingly, the district court's denial of defendant's motion for judgment of acquittal will be reversed as to Count Two, and the case remanded with directions for the district court to vacate the conviction and sentence for the offense of possession of child pornography. Thus, the discussion in this Part of the opinion applies only to the offense of conviction alleged in Count One.

The district court's denial of a motion for judgment of acquittal based upon insufficiency of the evidence is reviewed *de novo*, but the evidence is viewed in the light most favorable to the government. *Dodds*, 347 F.3d at 900. All reasonable inferences should be drawn in favor of the jury's verdict. *United States v. Westry,* 524 F.3d 1198, 1210 (11th Cir. 2008). The conviction will not be overturned "'unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (quoting *United States v. Christo*, 129 F.3d 578, 579 (11th Cir. 1997)); *see also*, *e.g.*, *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (holding that, when reviewing the denial of a motion for judgment of acquittal on appeal, the Court "must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt") (citations omitted).

26

The statute upon which Count One was based makes it a federal offense for anyone to knowingly receive child pornography that has been mailed or transported in interstate or foreign commerce "by any means, including by computer." 18 U.S.C. § 2252A(a)(2)(A).[24]

## A. Receipt

"A person 'knowingly receives' child pornography under 18 U.S.C. § 2252A(a)(2) when he intentionally views, acquires, or accepts child pornography on a computer from an outside source." *United States v. Pruitt,* 638 F.3d 763, 766 (11th Cir. 2011).

> Under this statute's "knowingly receives" element, an intentional viewer of child-pornography images sent to his computer may be convicted whether or not, for example, he acts to save the images to a hard drive, to edit them, or otherwise to exert more control over them. *Cf. United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006) (finding sufficient for "receiv[ing]" under Section 2252A that "Romm exercised dominion and control over the images in his cache by enlarging them on his screen, and saving them there for five minutes before deleting them"). Evidence that a person has sought out — searched for — child pornography on the internet and has a computer containing child-pornography images — whether in the hard drive, cache, or unallocated spaces — can count as circumstantial evidence that a person has "knowingly receive[d]" child pornography.

---

[24] To be precise, the statute states that "[a]ny person who . . . knowingly receives or distributes . . . any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer," shall be guilty of a federal offense. 18 U.S.C. § 2252A(a)(2)(A) (alteration and ellipses supplied).

27

*Pruitt*, 638 F.3d at 766 (alterations in original).  Bilus argues that this element was not established because there was no evidence that he actually viewed the pornography found on his computer.  Significantly, however, the case law does not make actual viewing of the images a strict requirement.  *Pruitt* clearly states that the "receipt" element can be satisfied by "view[ing], acquir[ing], *or* accept[ing]" child pornography.  *Id.* (alterations and emphasis supplied).  The use of the disjunctive conjunction "or" indicates that any one of those actions will suffice.  And in that regard, a reasonable jury could have concluded, beyond a reasonable doubt, that there was at least circumstantial evidence that Bilus *acquired* or *accepted* child pornography on his computer, even if he did not actually view it.  Detective Madsen testified that there was evidence indicating that the files containing pornographic images had been accessed after they were placed on Bilus's computer.  The images also had been saved on the computer in folders located within a parent directory entitled "Bobby."  ECF No. 153, at 71, 73.  One of those folders, entitled "my received files," contained several files that included the term "PTHC," which stands for "preteen hard core" and is a term commonly used to search the internet for child pornography.  *Id.* at 75.  A forensic examination revealed that search terms like "preteen XXX," "teen XXX," and "casualteensex" had been entered into the computer.  *Id.* at 85.  Finally, Bilus had

28

engaged in an online chat with another person, both before and after one of the files was accessed.  Madsen testified that "it was less than likely that someone would not view whatever it is they are doing online, especially when they are talking about it."  ECF No. 154, at 43.[25]

## B.    Interstate Commerce

The government asserts that the interstate commerce element was satisfied by evidence that the pornographic images found on Bilus's computer originated from the internet, as well as evidence that the computer's hard drive was manufactured in Thailand.  Bilus does not dispute that an internet origin would satisfy the interstate commerce requirement, nor could he, because it is clearly established that "[t]he internet is an instrumentality of interstate commerce." *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) (citing *United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir. 2004); *United States v. Panfil*, 338 F.3d 1299, 1300 (11th Cir. 2003)) (alteration supplied).  Instead, Bilus asserts

---

[25] The record did contain some contradictory evidence.  For example, Detective Madsen testified that the creation time, last written time, and last accessed time for all of the files in evidence were within seconds of each other, indicating that the files *could have* been placed on the computer, but not viewed.  He acknowledged that his expert report did not contain definitive forensic proof that the files had been viewed.  Madsen also testified that the last accessed date would not necessarily coincide with the last viewed date in all instances, because programs like a virus scan can also "access" the computer, causing the last accessed date to reset.  Even so, a reasonable jury could have disregarded that evidence, and found the other evidence sufficient to support Bilus's guilt beyond a reasonable doubt.

29

that "[t]he evidence presented at trial regarding interstate commerce was speculative, contradictory and misleading."  Appellant's Brief, at 58 (alteration supplied).  The record does not support that assertion.

Detective Madsen testified that the pornographic files found on the hard drive of Bilus's laptop were downloaded from the internet, but when stating his opinion he used qualifying language like "It is *my belief* that it was Yahoo Messenger," and "Based on the evidence that I had, *I would say* that they were received from the Internet."  ECF No. 153, at 78, 80 (emphasis supplied).  Bilus contends that such phraseology indicates that Madsen's opinion was speculative.  We do not agree.  Even though the manner in which Madsen stated his opinions leaves something to be desired, his qualified statements were not the only bases for his opinions. Madsen further explained his conclusion about Bilus's use of "Yahoo Messenger" by stating that he had reviewed chats located on the hard drive of Bilus's computer.  He explained his conclusion about the internet origin of the pornographic images by stating that:

> If you receive a file transfer through, whether it is Yahoo Messenger or Skype, and you select to save a file, it creates a record in a systems folder in a DAT file.  That location, that does not happen. If you move it from one external device to your hard drive to the desktop, to a folder, that record is not created.  It is created if you hit save as.  So in order to minimize that on an external device or flash drive, you would have to, instead of dragging, moving, or copying,

you would have to actually open it and then choose to save as in a new location, instead of just dragging and dropping it.

*Id.* at 80.  He also stated that other external devices had been located at Bilus's home.

Detective Madsen acknowledged that it is not always possible to differentiate between intentional searches for child pornography, and searches in which an individual accidentally types in an internet search term that generates child pornography.  Even so, there was other evidence indicating that the searches conducted by Bilus were intentional, including the repeated nature of some of the searches, his act of storing search results on his computer in folders with his name in the titles, and the use of commonly known search terms to locate child pornography.

A reasonable jury should be entitled to rely upon the opinion of the government's expert witness that the files were downloaded from the internet, regardless of the words used by the expert to express his opinion.  A reasonable jury also is entitled to afford more weight to some aspects of an expert's testimony than to others.

31

For all these reasons, the trial court's denial of Bilus's motions for judgment of acquittal will be affirmed with regard to the offense of receipt of child pornography alleged in Count One of the indictment.

## VII. SENTENCING

Following two days of sentencing hearings, Bilus was committed to the custody of the Bureau of Prisons for concurrent terms of 168 months for receipt of child pornography, and 120 months for possession of child pornography. As previously noted, the case will be remanded with directions for the district court to vacate the conviction and sentence for the latter offense. In this section, we discuss Bilus's contention that his sentence for the offense of receipt of child pornography was both procedurally and substantively unreasonable.

The Presentence Investigation Report imposed a Base Offense Level of **22** for the offense of receipt of child pornography in accordance with United States Sentencing Guideline ("Guideline") § 2G2.2(a)(2). Two levels were deducted in accordance with Guideline § 2G2.2(b)(1), because the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of minors, and there was no evidence that the defendant intended to traffic in or to distribute such material. The adjusted base offense level of **20** then was enhanced by the following specific offense characteristics:    **2** levels were added in

32

accordance with Guideline § 2G2.2(b)(2), because the material possessed by Bilus involved minors who had not attained the age of 12 years; **5** levels were added in accordance with § 2G2.2(b)(5), because there was evidence of a pattern of activity involving the sexual abuse or exploitation of minors; **2** levels were added in accordance with § 2G2.2(b)(6), because the offense involved the use of a computer, or an interactive computer service for the possession, transmission, or receipt of the pornographic material, or for accessing the material with the intent to view it; and, **4** levels were added in accordance with § 2G2.2(b)(7)(C), because the offense involved more than 300, but fewer than 600 images.[26]  Thus, the total offense level for purposes of computing the defendant's sentence under the Sentencing Guidelines was **33**:  *i.e.*, 22 – 2 + 2 + 5 + 2 + 4 = 33.  Bilus's criminal history score was 1,[27] and his criminal history category accordingly was a Roman

---

[26] USSG § 2G2.2(b)(7)(C) requires the addition of **4** levels "[i]f the offense involved . . . at least 300 images, but fewer than 600 [images]" (alterations supplied).  Application Note 4(B)(*ii*) of the Commentary to USSG § 2G2.2 provides that, for the purpose of determining the number of images under subsection (b)(7), "[e]ach video, video-clip, movie, or similar visual depiction shall be considered to have 75 images" (alteration supplied).  *See also* ECF No. 117 (Presentence Investigation Report) ¶ 31, at 12 ("The defendant possessed 30 images of child pornography and 7 videos containing child pornography.  Each video is counted as 75 images, therefore the defendant is held accountable for 555 images.").

[27] The only convictions on Bilus's record were those November 7, 2013 state court convictions for the offenses growing out of the August 15, 2010 traffic stop that are described in the text accompanying notes 11 and 12, *supra*.  *See* ECF No. 117 (Presentence Investigation Report) ¶ 41, at 13-14.

numeral "I."[28]    An offense level of 33, when joined with a criminal history

category of I, produced an advisory guideline imprisonment range of 135 to 168

months for the offense of receipt of child pornography.[29]

When the district judge pronounced sentence at the conclusion of the second

sentencing hearing, he stated:

> All of the outstanding motions of the defendant made previously are being denied again.  The objections that were raised during the sentencing are overruled and denied.  And the position maintained by the probation officer and/or the government has been the correct position in this case.
>
> I find the presentence report to be complete, true and accurate.
>
> It is the judgment of this Court that this defendant be committed to the custody of the Bureau of Prisons for a term of 168 months [the high-end of the finally determined Guidelines sentence range] as to Count One, 120 months as to Count Two; these terms to run concurrent one with the other.
>
> This is sufficient under the circumstances for punishment and for deterrent, for whatever effect that may have on deterrent.
>
> I have considered the 3353 factors[30] as well as all of the policy statements and guidelines.  And this appears from the facts and the law and the evidence it will be an appropriate sentence.

---

[28] According to the sentencing table found in USSG Chapter 5, Part A, a criminal history score of 1 establishes a criminal history category of Roman Numeral "I."  *See* ECF No. 117 (Presentence Investigation Report) ¶¶ 42 & 43, at 14.

[29] *See id*. ¶ 75, at 18.  The statutory minimum punishment for a violation of 18 U.S.C. § 2252A(a)(2)(A) is 5 years (or 60 months), and the maximum is 20 years (or 240 months).  18 U.S.C. § 2252A(b)(1).

ECF No. 157, at 37-38 (alterations supplied).

The procedural and substantive reasonableness of a sentence is reviewed for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The Supreme Court has instructed that

> a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See* [*Rita v. United States*,] 551 U.S.[ 338,] 347-348 [(2007)]. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. *See id.*, at 351, 127 S. Ct. 2456. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it

---

[30] The "3553 factors" is a reference to the sentencing considerations enumerated in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

*United States v. Cavallo*, – F.3d – , 2015 WL 3827099, at *22 n.20 (11th Cir. June 22, 2015).

uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Ibid.*, 127 S. Ct. 2456.

Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. *Id.*, at 347, 127 S. Ct. 2456. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall*, 552 U.S. at 49-50 (footnote omitted, alteration supplied).

## A.    Procedural Reasonableness

### 1.    Consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a)

36

Bilus first asserts that the district court failed to adequately consider the sentencing factors enumerated in 18 U.S.C. § 3553(a).  A district court, however, "is not required 'to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.'"  *United States v. Sanchez*, 586 F.3d 918, 936 (11th Cir. 2009) (quoting *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007)) (alteration supplied).  Instead, "[i]t is sufficient that the district court considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account." *Sanchez*, 568 F.3d at 936 (citing *Scott,* 426 F.3d at 1330; *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005), *abrogated on other grounds by Rita*, 551 U.S. 338) (alteration supplied).

In *United States v. Docampo*, 573 F.3d 1091 (11th Cir. 2009), this Court held that the district court properly considered the sentencing factors when it "stated that it had heard and considered [the defendant's] arguments," and then stated:

> After considering the advisory sentencing guidelines and all of the factors identified in Title 18 United States Code, Section 3553(a)(1) through (7), the Court finds that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing.

37

*Id.* at 1100 (alteration supplied, internal quotation marks and citation omitted).

In *Sanchez*, this Court found that the trial court adequately discussed the sentencing factors when it addressed all the factors that had been raised by the defendant. 568 F.3d at 936. In *Scott*, this Court held that the district court had properly considered the sentencing factors when it "stated that it had considered 'all the obvious things that you would normally take in consideration,' particularly 'the age of the child,'" and when it "explicitly acknowledged that it had considered [the defendant's] arguments at sentencing and that it had considered the factors set forth in § 3553(a)." 426 F.3d at 1329-30 (alteration supplied).

Similarly, the district judge in the present case stated that he had considered all of the § 3353 factors, and had given special consideration to the need for punishment and deterrence. Those statements were made after a sentencing hearing during which the judge heard all of Bilus's arguments. Even though the judge did not recite all of the sentencing factors enumerated in § 3353(a), his sentencing statement was not so devoid of detail and explanation as to constitute procedural error.

### 2. Application of the § 2G2.2(b)(2) enhancement

Bilus asserts that the district court procedurally erred when applying a two-level enhancement to the base offense level for the specific offense characteristic

38

of receipt of pornographic material involving a minor who had not attained the age of 12 years.[31]  Bilus contends that this enhancement contains an intent element, *see United States v. Saylor*, 959 F.2d 198, 200 (11th Cir. 1992), but "[t]he jury was not asked and did not make a determination that Bilus intended to receive material involving children under 12."  Appellant's Brief, at 70 (alteration supplied).  He also asserts that the indictment did not specifically refer to children under age 12.

> The indictment at issue in this Court's opinion in *Saylor*
>
> referred only to "children" in the conspiracy count and to "minors" and "young girls" in the substantive count, and did not allege the age of the children that would permit enhancement.  Thus, [*United States v.*] *Gomez*[, 905 F.2d 1513 (11th Cir.1990),] and [*United States v.*] *Alvarez*[, 735 F.2d 461 (11th Cir. 1984),] tend to support the argument that the enhancement should not apply if the defendant intended to receive material involving children over 12 years of age, and whose conviction by the jury did not show otherwise.

*Id.* at 200 (alterations supplied).[32]  That language cannot be extended as far as Bilus suggests, however.  The intent requirement addressed in *Saylor* was not

---

[31] Bilus actually states that the district court "procedurally erred in assessing the two-level increase under U.S.S.G. § 2G2.2(b)(**1**)."  Appellant's Brief at 70.  That is an obvious typographical error, because § 2G2.2(b)(**1**) calls for a *reduction* of two levels, *not* an *enhancement*.  The correct reference is USSG § 2G2.2(b)(**2**), which calls for a 2-level increase when the pornographic material "involved a prepubescent minor or a minor who had not attained the age of 12 years."

[32] In those cases, this Court "distinguished between cases where the indictment upon which the defendant was found guilty specified the type and quantity of drug involved and those cases where neither the indictment nor the jury verdict made these facts clear."  *Saylor*, 959 F.2d at 200 (citing *United States v. Alvarez*, 735 F.2d 461 (11th Cir. 1984)).

satisfied because the defendant had specifically stated on an order form that he only wanted to receive videos of children *over* the age of 12 years, but he, nevertheless, was sent videos of younger children. *See id.* at 199-200. There is no such evidence here. Instead, Bilus's own expert, Dr. Rosenbloom, a pediatric endocrinologist, acknowledged that the titles to at least two of the files — "11yofucking.wmv" and "best 10yohavingfirstorgasm.impeg" — indicate that the files would depict children under the age of 12 years. ECF No. 134, at 86-87. Thus, Bilus's intent to view images of children under the age of 12 years can reasonably be inferred from those file names. Dr. Rosenbloom also testified, based upon an analysis of the physical characteristics of the participants depicted in three of the photographic images and one of the videos seized from Bilus's computer, that the sexual acts depicted in that evidence likely involved children under the age of 12 years. Two images were even of a toddler who was "unquestionably under 12 years of age." ECF No. 134, at 58.

Thus, the district court did not abuse its discretion in finding that Bilus received pornographic material involving minors who had not attained the age of 12 years, and applying the enhancement called for in USSG § 2G2.2(b)(2).

### 3. Application of the § 2G2.2(b)(5) enhancement

Bilus also asserts that the district court procedurally erred in applying a five-level increase to the base offense level for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor," pursuant to USSG § 2G2.2(b)(5) (alteration supplied).    The comment to the Sentencing Guidelines defines the phrase "pattern of activity involving the sexual abuse or exploitation of a minor" as

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

USSG § 2G2.2(b)(5), comment (n.1).    The term "sexual abuse or exploitation" is defined as any of the following:

> (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B).    "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

41

*Id.* The "sexual abuse or exploitation" at issue here appears to be an attempt to commit the offenses described in 18 U.S.C. §§ 2241-2243, which concern the performance of actual sex acts.

Bilus engaged in a series of Skype "chats" with individuals who were believed to be minors. The Presentence Report contains detailed summaries of five chats in which the other participants inform Bilus that they are underage. Some of the chats included video sessions during which Bilus and/or the other participant would masturbate. During some chats, Bilus asked the participant to take off her clothes and show him her private parts. During others, he told the other party that he wanted to perform sexual acts with her in person. On one occasion, he asked the other participant in the online chat where she lived, and whether she wanted him to visit her.

Bilus asserts that the district court erroneously applied this enhancement because there was no evidence that the other chat participants were minors, or that Bilus believed they were minors. That argument clearly is unfounded, as the participants in at least some of the chats directly informed Bilus they were under the age of 18.[33]

---

[33] The comment to the Guidelines defines a minor as "an individual who has not attained the age of 18 years." USSG § 2G2.2(b)(5), comment (n.1).

42

Bilus also asserts that the chats did not constitute a "substantial step" toward the actual commission of an offense, as is required for an "attempt." His argument is based upon *United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010). There, the defendant pled guilty to using a computer to induce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b),[34] and possessing visual depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B).[35] *Id.* at 623. The issue on appeal was whether the district court

---

[34] That statute provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2242(b).

[35] That provision criminally punishes anyone who:

> knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—

> > (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

> > (ii) such visual depiction is of such conduct

18 U.S.C. § 2252(a)(4)(B).

43

erred in applying the § 2G2.2(b)(5) enhancement as a result of two chats located on the defendant's computer.   During both of the chats, the defendant "actively coached and encouraged other adults in graphic detail about how to sexually abuse minors in their care or under their influence."  *Id.* at 625.  The defendant asserted that the chats were not "legally sufficient to constitute an attempt to violate 18 U.S.C. § 2422(b) or any other law because neither chat rises to the level of a 'substantial step' toward commission of an offense."  *Id.* at 626.  An essential element of any attempt crime is that the defendant "engaged in conduct which constituted a substantial step toward the commission of that crime and which strongly corroborates the defendant's criminal intent."  *Id.* (citing *United States v. Yost*, 479 F.3d 815, 819 (11th Cir. 2007); *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004); *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001)).

> Whether a given activity or course of conduct amounts to a substantial step toward the commission of a crime is a question of fact that will vary from case to case depending not only upon the activity or course of conduct itself, but also upon the nature of the underlying offense to which the attempt is tied.

*Rothenberg*, 610 F.3d at 627.  Under the facts presented in *Rothenberg*, this Court easily reached the conclusion that the chats constituted a substantial step toward the commission of an offense involving the persuading, inducing, or enticing

44

engagement in unlawful sexual activity, given that oral or written communications

were "the principal if not the exclusive means of committing the offense." *Id.* The

defendant's chats were

> specific instructions to adults with influence over young children;
> these graphic guides to sexual exploitation showed the adults both
> how, physically, to molest the children and how, emotionally, to
> persuade the children to comply with the abuse. Accordingly, the
> chats constituted "important action[s] leading to the commission" of
> inducing particular children to engage in illegal sexual activity.

*Id.* (alteration in original).

Similarly, here, it is not difficult to make a mental leap from the content of

Bilus's chats to the commission of a sex crime. Bilus asserts that there was "no

evidence that [he] had discussions with the alleged minors about *meeting* to have

sex. The communications were not of a persuasive nature and did not attempt to

persuade the alleged minor to meet Bilus to have sex." Appellant's Brief, at 72

(alteration supplied, emphasis in original). That assertion is flatly contradicted by

the record. During one chat, Bilus asked the other participant where she lived and

if she wanted him to visit her. During other chats, Bilus stated that he would have

to "be careful" with the other participant if they met in person because of her age.

ECF No. 117, at 9. He told some participants he wanted to have sex with them,

and he described specific sex acts he wanted to perform.

45

Based on the foregoing, the trial court did not abuse its discretion in finding that Bilus had engaged in a pattern (two or more instances) of sexual abuse or exploitation of a minor and applying the enhancement set forth in § 2G2.2(b)(5).

## B.    Substantive Reasonableness

Bilus also asserts that the trial court's sentence was substantively unreasonable.  As the party challenging the sentence, he bears the burden of showing that it is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010) ("The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors.") (citing *United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006)).

A district court abuses its discretion, and thereby renders the sentence imposed substantively unreasonable, "'when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors.'" *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006)).  A "clear error of judgment" occurs when a district court "considers the proper factors but balances them unreasonably," resulting in "a sentence that does not 'achieve the purposes of sentencing as stated in § 3553(a).'" *Irey*, 612 F.3d at

46

1189 (citations omitted).    An appellate court should review each step of the sentencing calculation and consider the totality of the circumstances.  *Id.* at 1189-90.

> To the extent that the district court has found facts, we accept them unless they are clearly erroneous.  [*United States v. Pugh*, 515 F.3d 1179, 1192 (11th Cir. 2008)].  At the same time we can and should consider "additional salient facts that were elicited, and uncontroverted."  *Id.*  The difference is between contradicting a factfinding, on the one hand, and ignoring uncontroverted facts that the district court failed to mention on the other.  That difference is important because a district court cannot write out of the record undisputed facts by simply ignoring them.  The failure to mention facts may well reflect the district court's judgment that those facts are not important, but the importance of facts in light of the § 3553(a) factors is not itself a question of fact but instead is an issue of law. *See United States v. Taylor*, 487 U.S. 326, 337, 108 S. Ct. 2413, 2419-20, 101 L. Ed. 2d 297 (1988) ("Factual findings of a district court are, of course, entitled to substantial deference and will be reversed only for clear error.  A judgment that must be arrived at by considering and applying statutory criteria, however, constitutes the application of law to fact and requires the reviewing court to undertake more substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute." (citations omitted)).
>
> After performing the required analysis, we are to vacate the sentence if, but only if, we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *Pugh*, 515 F.3d at 1191 (quotation marks omitted); *accord United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009); *United States v. McBride*, 511 F.3d 1293, 1297-98 (11th Cir. 2007); *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).

*Irey*, 612 F.3d at 1190 (footnote omitted, alterations supplied).

Bilus asserts that district court's sentence was unreasonable because it afforded too much weight to the punishment and deterrence factors, and not enough weight to the testimony of his expert witness, Dr. Eric Imhof, that he was amenable to treatment and posed a low risk of recidivism. Bilus also asserts that the district court should have afforded greater weight to the fact that the number of images he possessed was on the "low end" compared to other offenders. Appellant's Brief, at 66; *see also* ECF No. 157, at 21.

Bilus's argument amounts to nothing more than his disagreement with the district court's decision about how to weigh various sentencing factors. That is insufficient to demonstrate that the district court abused its discretion. *See Gall,* 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."). Because the 168-month sentence fell within the Guidelines range (albeit at the high end of the range), the Court can expect it to be reasonable. *See United States v. Perkins*, 787 F.3d 1329, 1342 (11th Cir. 2015) ("Although we do not automatically presume that a sentence within the guidelines range is reasonable, we ordinarily expect such a sentence to be reasonable.") (citing *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008)). The district court weighed all

48

of the § 3353(a) factors, and it was entitled to afford more weight to the factors of punishment and deterrence. Those considerations are particularly important in child pornography cases, because society has a strong interest in protecting children and preventing future child sex crimes. Given Bilus's pattern of sexual behavior involving children, including at least one instance where he was convicted for engaging in sexual contact with a child he met online, it was not unreasonable for the district court to focus on those factors. Moreover, as discussed previously, the district court did not err in failing to more fully explain its weighing of the § 3353(a) factors.

In summary, considering the totality of the circumstances, the district court did not abuse its discretion, and thereby commit substantive error, when it imposed a sentence at the top of the Guidelines range.

## VIII. CONCLUSION

For the foregoing reasons, we conclude that the district court erred in denying Bilus's motion for judgment of acquittal as to Count Two of the indictment. The district court's denial of the motion for judgment of acquittal is REVERSED and REMANDED as to Count Two, with directions for the district court to vacate the conviction and sentence for the offense alleged in that Count. In all other respects, the district court's decision is AFFIRMED.

49

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**